United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-10-772 SC |
| Plaintiff, | ) |
| | ) ORDER DENYING DEFENDANT'S |
| v. | ) MOTION FOR ACQUITTAL AND/OR |
| | ) NEW TRIAL |
| GREGORY WALKER, | ) |
| | ) |
| Defendant. | ) |

## I. INTRODUCTION

A jury found Defendant Gregory Walker ("Defendant") guilty of possessing ammunition in violation of 18 U.S.C. § 922(g)(1). Now Defendant moves under Rules 29 and 33 of the Federal Rules of Criminal Procedure for a judgment of acquittal and/or new trial. ECF No. 67 ("Mot."). The government filed an Opposition; Defendant did not file a Reply. ECF Nos. 71 ("Opp'n"), 72 ("Reply"). A hearing on this motion was held on August 29, 2011. Having considered the papers submitted and the arguments made by both parties, the Court DENIES Defendant's Motion.

## II. BACKGROUND

On June 3, 2010, a shoot-out occurred in the Western Addition neighborhood of San Francisco, near the intersection of Turk Street and Steiner Street. Defendant was subsequently arrested on suspicion of participating in this shoot-out, and on October 21,

2010, he was indicted on one count of violating 18 U.S.C. § 922(g)(1). ECF No. 1 ("Indictment"). Section 922(g)(1) prohibits the possession of ammunition by individuals previously convicted of a crime punishable by a term of imprisonment exceeding one year.

Prior to trial, Defendant filed a motion to exclude certain identification evidence at trial. ECF No. 27. Defendant stated that surveillance cameras in and around the nearby Laurel Gardens housing project captured footage of the shoot-out. Id. Defendant anticipated that the government would call as witnesses members of the San Francisco Police Department's ("SFPD") Gang Task Force to identify Defendant based on their review of the surveillance footage. Id. at 16. Defendant argued that this evidence should be excluded because it "improperly invades the province of the jury" and was "inherently prejudicial" because it would lead the jury to believe Defendant had prior contacts with the police. Id. The government opposed Defendant's motion, arguing that under United States v. Beck, 418 F.3d 1008, 1013 (9th Cir. 2005), such testimony is admissible if it is rationally based and sufficiently helpful to the jury. ECF No. 29 at 8. The government argued that unidentified law enforcement officers had numerous prior contacts with Defendant and were familiar with Defendant's appearance at the time of the alleged incident. Id. at 8-9.

On June 20, 2011, the Court conducted an evidentiary hearing. ECF No. 42. The government produced SFPD Officers Sean Griffin ("Griffin") and David Do ("Do"), and both officers stated that they could identify Defendant as the shooter in the surveillance footage due to their numerous prior contacts with Defendant. Griffin stated that he was assigned to the SFPD's Gang Task Force and that

he specialized in Western Addition gangs. Id. at 76:19-21.  After watching the video, Griffin identified Defendant as the shooter, saying, "I know him personally."  Id. at 79:11.  Griffin testified that he had had "dozens and dozens" of contacts with Defendant, including multiple "documented contacts" -- i.e., contacts in which police reports were generated.  Id. at 79:13-24.  These documented contacts were discussed at great length.  Id. at 79-85.  Griffin testified that due to these contacts, he was able to identify Griffin in "one second" upon his first viewing of the video clip. Id. at 87:4-6.  Griffin also testified that he could identify the individual near the shooter in the video as Defendant's brother, Julius Hughes ("Hughes").  Id. at 87:8-12.

Do testified that in 2009, he was assigned to the SFPD's Gang Task Force and was investigating gangs in the Western Addition. Id. at 106:14-17.  After viewing the surveillance footage, Do identified Defendant as the shooter and Hughes as his companion on the basis of "prior police contacts."  Id. at 108:6-11.  Do testified that he had "approximately four to five" prior contacts with Defendant, and discussed those prior contacts.  Id. at 108:14-110:10.  On cross-examination, Do admitted that because he was transferred from the Gang Task Force in November 2009, he could not know whether Defendant had facial hair in June 2010, and that he had reviewed booking photos of Defendant prior to viewing the surveillance video.  Id. at 115:25-117:9.

The Court denied Defendant's motion, finding that given the officers' numerous prior contacts with Defendant and the quality of those contacts, their testimony would be helpful to the jury.  Id. at 132:4-24.  The Court ordered the parties to meet and confer to

discuss how best to "sanitize" the contacts so as to not unfairly prejudice the jury and to alert the Court if no agreement could be made. Id. at 134:1-10.

Trial commenced on June 27, 2011. Before opening statements and outside the presence of the jury, the parties agreed that Officers Griffin and Do would be identified as police officers, but that they would not tell the jury they worked for the SFPD's Gang Task Force. TR 13:17-14:15. During its case-in-chief, the government introduced video footage from two surveillance cameras in the Laurel Gardens housing project. Gov.'s Exs. 2 & 3. The footage captured an individual in a black hooded sweatshirt firing a gun across Turk Street. A second camera captured two seconds of footage wherein the shooter's face is briefly visible.

The government called Officers Griffin and Do as witnesses. Griffin testified that he had been a police officer for eleven years and had multiple prior contacts with Defendant. TR 229:12-20. Griffin testified that he arrived at Laurel Gardens during the shooting on June 3, 2010, shortly after shots were fired. Id. at 230:12-25. Griffin identified the individual in the surveillance footage as Defendant. Id. at 238:17-239:4. He testified that upon seeing the video for the first time, it took him only a second to identify Defendant based on his face and what he called his "distinctive receding hairline." Id. at 239:15-20. Griffin identified the other adult in the video footage as Hughes, Defendant's half-brother. Id. at 238:17-239:4

Do testified that he had been a police officer for thirteen years and that he knew Defendant from previous contacts. Id. at 289:12-17. Do also identified Defendant as the individual in the

4

1 surveillance video based on his facial features and distinctive
2 receding hairline, and he identified Hughes as the other adult in
3 the video footage. Id. at 293:3-8, 297:10-17.

4 The government also introduced into evidence two Sellier &
5 Bellot .40 caliber S&W shell casings found near the Laurel Gardens
6 parking lot, not far from the area where the shooter fired, and
7 several other bullets and casings found in the area the night of
8 the shooting.

9 After deliberation, the jury returned a guilty verdict on the
10 single count of violation of 18 U.S.C. § 922(g)(1).

## III. LEGAL STANDARD

### A. Motion for Judgment of Acquittal

Under Rule 29 of the Federal Rules of Criminal Procedure, a court must enter judgment of acquittal if the evidence, viewed in the light most favorable to the government, would not permit any rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). The court must deny the motion if it determines that "at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in light favorable to the Government." United States v. Figueroa-Paz, 468 F.2d 1055, 1058 (9th Cir. 1972).

### B. Motion for New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth

Circuit has held that a motion for a new trial should be granted only in "exceptional circumstances in which the evidence weighs heavily against the verdict." <u>United States v. Hsieh Hui Mei Chen</u>, 754 F.2d 817, 821 (9th Cir. 1985).

**IV.   DISCUSSION**

    **A.   Motion for Judgment of Acquittal**

To prove a violation of 18 U.S.C. § 922(g)(1), the government must establish that a defendant knowingly possessed ammunition, the ammunition had been transported from one state to another or between a foreign nation and the United States, and at the time the defendant possessed the ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year. <u>United States v. Montero-Camargo</u>, 177 F.3d 1118, 1120, amended on other grounds by 183 F.3d 1172 (9th Cir. 1999).

Defendant argues that there was insufficient evidence for a rational jury to conclude that Defendant was guilty of violating 18 U.S.C. § 922(g)(1) beyond a reasonable doubt. Mot. at 6-8. Specifically, Defendant argues that the only evidence of "identity" -- that is, that Defendant was the shooter in the surveillance video -- was the surveillance videos and the testimony of Griffin and Do. <u>Id.</u> Defendant argues that the surveillance video "does not sufficiently show the facial features of the subject to allow anyone to make a positive identification." <u>Id.</u> at 7. Defendant argues that even slowing the video down frame-by-frame does not make a clear identification possible "because the surveillance video is just not clear enough." <u>Id.</u> Defendant argues that there

was no evidence introduced at trial which corroborated the identification by Griffin and Do. Id. at 7-8.

The government responds that "[t]he law does not require corroboration for the jury to deem their testimony credible," arguing that in the Ninth Circuit, "the jury is the exclusive arbiter of witness credibility." Opp'n at 4 (citing United States v. Nelson, 419 F.2d 1237, 1242 (9th Cir. 1969) and United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977)). The government argues that even though no corroborating evidence is required, there was corroborating evidence, as the government offered evidence that the other individual in the video was Defendant's brother, that Griffin had seen Defendant with his brother in the past, and that Defendant's brother's mother-in-law lived in Laurel Gardens. Opp'n at 4.

The Court agrees with the government. The evidence at trial was sufficient for a rational jury to conclude that the Defendant was the shooter. Accordingly, it DENIES Defendant's Motion.

**B.  Motion for New Trial**

Defendant argues that he is entitled to a new trial because the testimony of Griffin and Do "improperly invaded the province of the jury." Mot. at 10. Defendant argues that this testimony constituted lay witness testimony that failed to satisfy Rule 701 of the Federal Rules of Evidence and thus violated his rights under the Due Process Clause. Id.

Rule 701 states that a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony

or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Here, both Griffin and Do testified that due to numerous prior contacts with Defendant, they were able to identify Defendant as the shooter in the surveillance videos. The surveillance video was not clear enough to render this testimony superfluous to the jury; nor was it so unclear as to render the witnesses' identification of Defendant from it not rationally based on their perception. As such, the Court rejects Defendant's argument that admission of Griffin's and Do's testimony violated his rights under the Due Process Clause.

Defendant also argues that the admission of Griffin's and Do's testimony violated his rights under the Confrontation Clause. Mot. at 11. The Confrontation Clause protects the criminal defendant's right to cross-examine witnesses who testify against him. Davis v. Alaska, 415 U.S. 308, 315 (1974). Defendant does not argue that he was denied the opportunity to cross-examine Griffin and Do; rather, he alleges that this cross-examination was ineffective because Defendant "could not explore the possible motives these two gang task force officers might harbor in positively identifying him . . . without revealing the damaging fact that they believed him to be a gang member and that the shooting was gang related." Id. at 11.

The government responds that Defendant had the opportunity to cross-examine both Griffin and Do and ask both witnesses about the nature of their alleged prior contacts with Defendant, including asking about "the time of day of the contacts, the frequency of the contacts, the lighting, the distance that the officers were from the defendant when they saw him, and their recollection about his

specific features." Opp'n at 10.  The government argues that Defendant's decision to not elicit questions about the officers' role with SFPD's Gang Task Force was "a matter of strategy."  Id.

The Court agrees with the government.  Defendant had the opportunity to cross-examine Griffin and Do.  He made the choice to avoid questioning that could have led to a discussion of Defendant's suspected gang involvement.  He had the opportunity to discuss "sanitization" of the witnesses with the government and alert the Court prior to trial if no agreement could be reached.  As such, he was not denied his rights under the Confrontation Clause.

**V.    CONCLUSION**

For the foregoing reasons, the Court DENIES the motion of Defendant Gregory Walker for a judgment of acquittal and a new trial.

IT IS SO ORDERED.

Dated: September 2, 2011

UNITED STATES DISTRICT JUDGE

9